FILED
2026 Oct-30 PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **OHIO SECURITY INSURANCE COMPANY et al.,** | ] | |
| **Plaintiffs,** | ] | |
| **v.** | ] | **7:26-cv-429-EGL** |
| **DIRT WORKZ EXCAVATION AND MULCHING, LLC et al.,** | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION & ORDER

Ohio Security Insurance Company and Ohio Casualty Insurance Company seek a declaration that they owe no duty to defend or indemnify Dirt Workz Excavation and Mulching, LLC ("Dirtworkz"), Seth Dewayne Newsome, or Michael Isaiah Mastin in a state-court auto-collision lawsuit. *See generally* Doc. 1. Plaintiffs have moved for judgment on the pleadings and default judgment. Doc. 23. For the reasons below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

On November 27, 2023, Newsome struck Mastin's vehicle while driving his 2013 Chevrolet 2500 in Tuscaloosa County, Alabama. Doc. 1 at ¶10. Mastin sued

Newsome and Dirtworkz (the "Underlying Suit") alleging negligence, wantonness, and negligent and wanton hiring, training, and supervision. *Id.* at ¶12. The Underlying Suit alleges that Newsome was a Dirtworkz employee operating his vehicle within the line and scope of his employment at the time of the collision. *Id.* at ¶11; Doc. 1-1 at ¶¶7–9.

Dirtworkz and Newsome contend that they are entitled to coverage under a commercial auto policy and general-liability policy Ohio Security issued to Dirtworkz. Doc. 1 at ¶¶26, 31. Plaintiffs disagree, and filed this action seeking a declaration that no coverage extends to the claims in the Underlying Suit. *Id.* at ¶¶25, 30, 35. Ohio Security nevertheless agreed to defend Dirtworkz under a reservation of rights while this action pends. *Id.* at ¶20.

Dirtworkz and Mastin answered. Docs. 10, 19. Dirtworkz admitted every allegation (except one immaterial fact regarding whether Newsome had a personal auto policy with Progressive). Doc. 19 at ¶19. Mastin claimed lack of information about various policy provisions, Doc. 10 at ¶¶13–19, but those denials do not produce any dispute because the policies are attached as exhibits to the complaint, *see* Docs. 1-1, 1-2, their authenticity is not challenged, and exhibits control over conflicting allegations, *see Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Newsome was served via certified mail on March 25, 2026, Doc. 6, yet

has failed to appear or otherwise defend. The Clerk entered default against Newsome on May 13, 2026. Doc. 14.

## STANDARD

### A. Declaratory Judgment Act

The Declaratory Judgment Act provides that federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). That "text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

To aid courts "in deciding whether to adjudicate, dismiss, or stay a declaratory judgment action under § 2201(a)," the Eleventh Circuit has articulated nine "non-exclusive guideposts for district courts to consider." *Nat'l Tr. Ins. Co. v. S. Heating & Cooling Inc*, 12 F.4th 1278, 1282 (11th Cir. 2021). The *Ameritas* "guideposts," *id.*, are the following:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
> (2) whether the judgment in the federal declaratory action would settle the controversy;
>
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;
>
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
>
> (6) whether there is an alternative remedy that is better or more effective;
>
> (7) whether the underlying factual issues are important to an informed resolution of the case;
>
> (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005).

Courts in this circuit "essentially employ a totality-of-the-circumstances standard" because the *Ameritas* guideposts "are not exhaustive; not all are required; and no one is controlling." *Nat'l Tr. Ins.*, 12 F.4th at 1286. Courts may even "sometimes dismiss declaratory judgment actions without considering any of the *Ameritas* guideposts." *Id.*

**B. Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the

pleadings." Rule 12(c) motions are governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Chestnut v. Merrill*, 377 F. Supp. 3d 1308, 1311 (N.D. Ala. 2019); *United States v. Bahr*, 275 F.R.D. 339, 340 (M.D. Ala. 2011). The principal difference is that a Rule 12(c) motion is made after the defendant has filed an answer, and the answer may also be considered in deciding the motion. *Bahr*, 275 F.R.D. at 340.

"Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Andrx Pharms., Inc. v. Elan Corp.*, 421 F.3d 1227, 1232–33 (11th Cir. 2005). The Court must accept as true all material facts alleged in the nonmoving party's pleading and view those facts in the light most favorable to the nonmoving party. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014); *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). However, the Court need not accept legal conclusions couched as factual allegations or unwarranted factual inferences. *Chestnut*, 377 F. Supp. 3d at 1312 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Perez*, 774 F.3d at 1335. And if the allegations about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls. *Hoefling*, 811 F.3d at 1277.

### C. Default Judgment

If a defendant fails to file a timely answer, default judgment may be sought against him. FED. R. CIV. P. 55. Rule 55 "establishes a two-part process" for obtaining default judgment. *Robinson v. Wells Fargo Bank, N.A.*, No. 15-cv-670, 2016 WL 3344251, at *3 (M.D. Ala. May 19, 2016). The moving party must first seek entry of default. FED. R. CIV. P. 55(a). Once the Clerk has entered default, then the moving party may apply for default judgment. *Id.* 55(b)(2). "When a defendant defaults, he admits the plaintiff's well-pleaded allegations of fact." *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015) (internal quotation marks omitted). "Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (internal quotation marks omitted).

## ANALYSIS

### I. Auto Policy

The Auto Policy provides coverage only for damages "resulting from the ownership, maintenance or use of a covered 'auto.'" Doc. 1-2 at 153. Symbol 7 designates some of those vehicles under certain conditions. *Id.* at 94, 152–53 .

Under Alabama law, such designations are unambiguous. *See Taber v. Nationwide Mut. Ins. Co.*, 447 So. 2d 698, 700 (Ala. 1984); *see also Canal Ins. Co. v. Old Republic Ins. Co.*, 718 So. 2d 8, 11–12 (Ala. 1998) (coverage limited to "an

owned automobile" "described in the declarations" "clearly provides coverage for specifically identified vehicles"); *Gen. Agents Ins. Co. of Am. v. Compton*, 921 F. Supp. 716, 722 (N.D. Ala. 1996) (finding identical "Symbol 7" designation unambiguous and holding no coverage where the vehicle involved was not listed).

Newsome's 2013 Chevrolet 2500 was not a designated vehicle. Doc. 1-2 at 94–98.[1] And while the Auto Policy also covers unowned autos used as temporary substitutes for owned and covered auto that are out of service, Doc. 1-2 at 153, the Underlying Suit alleges only that Newsome was driving "his vehicle," Doc. 1-1 at ¶¶6–7, and nothing suggests the truck was serving as such a substitute. Ohio Security therefore has no duty to defend Dirtworkz or Newsome under the Auto Policy. *See Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001); *see also Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1065 (Ala. 2003).

The duty to indemnify issue presented here, however, "is not ripe for adjudication until the underlying lawsuit is resolved." *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019). Unlike the duty to defend, an insurer's duty to indemnify depends on "the insured's conduct rather than the allegedly injured person's allegations." *Tanner*, 874 So. 2d at 1066. Thus an "injured party might conceivably recover on a claim, which, as he

[1] Mastin's lack-of-knowledge response in his answer, Doc. 10 at ¶24, creates no dispute because the Declarations are attached to the Complaint and control. *Hoefling*, 811 F.3d at 1277.

had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay." *Ladner & Co. v. S. Guar. Ins. Co.*, 347 So. 2d 100, 103 (Ala. 1977) (quoting *Lee v. Aetna Cas. & Surety Co.*, 178 F.2d 750, 752–53 (2d Cir. 1949) (L. Hand, C.J.)); *see also Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570, 574 (Ala. 1988) ("[T]he allegations on the face of the complaint may not be the same issues and causes of action that are ultimately determined. Thus, what may have begun as a claim for an intentional act, which would not be covered by the insurance policy, could end as a claim for negligence, which would be covered by the insurance policy."). In other words, "the actual facts discovered and proved in the underlying case may be different from the facts alleged in the underlying complaint." *Travelers Com. Ins. Co. v. Marlin*, No. 2:23-cv-789, 2023 WL 5673440, at *3 (N.D. Ala. Sept. 1, 2023); *see Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 455, 461 (5th Cir. 1960); *see also Allstate Ins. Co. v. Emps. Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971); *Emps. Ins. Co. of Wausau v. Pool*, 2023 WL 4230892, at *2 (11th Cir. June 28, 2023) (per curiam) ("We will not consider a declaratory judgment action on an insurance company's duty to indemnify until the underlying suit establishes the tortfeasor's liability. Until then, any declaratory judgment would improperly announce a hypothetical obligation (or lack thereof) to indemnify, which might never arise.") (internal citation omitted); *see also*

*Cypress Ins. Co. v. Foley*, No. 7:24-cv-746, 2025 WL 1758627, at *4 (N.D. Ala. June 25, 2025) (collecting cases).

There may be some cases under Alabama law in which a court might reasonably exercise discretion to decide the duty to indemnify before the underlying case ends. *See, e.g.*, *Snell v. United Specialty Ins. Co.*, 102 F.4th 1208, 1212–19 (11th Cir. 2024); *but see Cypress Ins. Co.*, 2025 WL 1758627, at *5 (noting that *Snell* did "not address Article III ripeness"). But, in this case, a declaration about the duty to indemnify is premature because such a declaration would be "contingent on future events that may not occur as anticipated, or indeed may not occur at all," *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1202 n.2 (11th Cir. 2021). For example, although Newsome's vehicle is clearly not covered *as alleged*, *see supra*, if the facts establish that the vehicle served as a temporary substitute auto, the duty to indemnify might then arise.

Thus, several *Ameritas* guideposts strongly favor dismissing the duty to indemnify claim. First, unlike for the duty to defend claim, "the underlying factual issues are important to an informed resolution of the" duty to indemnify. *Ameritas*, 411 F.3d at 1331. Second, "the judgment in the federal declaratory action would" not necessarily "settle the controversy," because the duty to indemnify turns on what facts will be proved in the state-court action. *Id.* Finally, a declaration on the duty to indemnify would not "serve a useful purpose in clarifying the legal relations at

issue." *Id.* The Court's declaration regarding the duty to defend already construes the insurance policies in light of the state-court complaint, and the resolution of those issues of contract interpretation are thus likely settled between the parties to the extent collateral estoppel applies. *See Campbell v. Campbell*, 561 So. 2d 1060, 1061 (Ala. 1990) ("Requirements for collateral estoppel to operate are (1) issue identical to one involved in previous suit; (2) issue actually litigated in prior action; and (3) resolution of the issue was necessary to the prior judgment."). There is no additional declaration the Court can provide as to the duty to indemnify, meaning it would not be useful to rule on it.

## II. CGL Policy

The CGL Policy's "Aircraft, Auto Or Watercraft" exclusion precludes coverage for bodily injury or property damage "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." Doc. 1-2 at 39. The exclusion expressly "applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured[.]" *Id.* The CGL Policy defines "insured" to include the named insured's "employees" "for acts within the scope of their employment by [the named insured] or while performing duties related to the conduct of [the named insured's] business." *Id.* at 45.

Under Alabama law, the dispositive question for scope of employment is "whether the employee was engaged in an act that he was hired to perform or in conduct that conferred a benefit on his employer." *Hulbert v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 22, 24 (Ala. 1998). Courts applying Alabama law have found that employees operating vehicles for the benefit of their employer fall within the definition of an "insured" under identical provisions. *See, e.g.*, *QBE Ins. Corp. v. Sullivan Trucking Co.*, No. 08-cv-616, 2009 WL 10703805, at *8 (N.D. Ala. May 13, 2009). But the duty to indemnify must rest on facts actually established, rather than mere allegations in the complaint. *See Tanner*, 874 So. 2d at 1063–66.

The Underlying Suit alleges that Newsome was Dirtworkz's employee, was directed by Dirtworkz, and was operating his vehicle within the line and scope of his employment at the time of the collision. Doc. 1-1 at ¶¶7–9; *see also* Doc. 10 at ¶11; Doc. 19 at ¶11. The exclusion therefore plainly applies to those allegations, including the negligent-hiring, training, and supervision claims, and no party has pointed to facts suggesting otherwise. Ohio Security thus has no duty to defend Dirtworkz or Newsome under the CGL Policy.

But, again, that has only been *alleged* and not *established*, so the Court cannot treat the duty to indemnify as ripe. *Cf. supra* Part I; *Mid-Continent Cas. Co.*, 766 F. App'x at 770–71; *see also Allstate Ins. Co.*, 445 F.2d at 1281. If Newsome was neither acting within the scope of his employment nor performing duties related to

Dirtworkz's business, he is not an insured; the truck would then not have been "owned or operated by … any insured," and thus the auto exclusion may not apply. Doc. 1-2 at 39.

## III. Umbrella Policy

The Umbrella Policy's "Auto Coverages" exclusion applies broadly to "[a]ny liability arising out of the ownership, maintenance, use or entrustment to others of any 'auto'" and "applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured." Doc. 1-2 at 244. This exclusion is even broader than the CGL Auto Exclusion because it contains no restriction as to the identity of the owner or operator of the auto. Because the Underlying Suit alleges that Newsome was driving his truck, an "auto," the exclusion applies.

The applicability of the exception to that exclusion, which restores coverage "to the extent 'underlying insurance' provides such coverage," *id.*, cannot be determined. "Underlying insurance" is limited to the policies listed in the Schedule of Underlying Insurance. *Id.* at 258. The Auto Policy and CGL Policy are the only policies listed on that schedule. *Id.* at 236. Because the Court cannot determine whether there is coverage under those policies as to Dirtworkz and Newsome, the Court cannot say whether the exception applies. *See Greene v. Hanover Ins. Co.*, 700

So. 2d 1354, 1358 n.5 (Ala. 1997); *see also Am. Res. Ins. Co. v. H & H Stephens Constr., Inc.*, 939 So. 2d 868, 874–79 (Ala. 2006).

Further, the Umbrella Policy imposes a duty to defend only when the limits of the underlying insurance have been exhausted by payment, or when damages are sought for an occurrence covered by the Umbrella Policy but not by the underlying insurance. Doc. 1-2 at 243. Neither condition is met. Nothing has been paid. And because the Auto Coverages exclusion bars coverage except to the extent the underlying insurance provides it, the Umbrella Policy covers no auto liability that the underlying policies do not. Ohio Casualty therefore has no duty to defend Dirtworkz or Newsome under the Umbrella Policy.

Whether Ohio Casualty must nevertheless indemnify Dirtworkz or Newsome depends on whether the underlying insurance provides coverage, which is not yet ripe. *See supra* Part I.

## IV. Default Judgment

Newsome was served with the Summons and Complaint via certified mail on March 25, 2026, Doc. 6, yet has failed to appear or otherwise defend. The Clerk entered default on May 13, 2026. Doc. 14. By defaulting, Newsome has admitted all well-pleaded factual allegations in the Complaint. *Hickman v. Am. Specialty Alloys, Inc.*, No. 15-cv-782, 2020 WL 5121350, at *1 (M.D. Ala. Aug. 31, 2020). The admitted facts, including the allegations of the Underlying Suit and the provisions

of the Policies, establish the absence of any duty to defend under any of the three policies. *Supra* Parts I–III. Newsome is not an infant, incompetent, or in the military service or in any branch of the armed forces of the United States. Doc. 13 at ¶¶5–6; *see* 50 U.S.C. § 3931(b)(1). All requirements for entry of default judgment against Newsome are otherwise satisfied. *See Prudential Ins. Co. of Am. v. Brooks*, No. 18-cv-1003, 2021 WL 5108741, at *3 (M.D. Ala. Nov. 3, 2021); *Cotton States Mut. Ins. Co. v. Sellars*, No. 07-cv-868, 2008 WL 4601015, at *4–*5 (M.D. Ala. Oct. 15, 2008). Accordingly, default judgment is **GRANTED** as to Newsome. To avoid inconsistent judgments, the relief entered against Newsome is the same granted against the answering defendants on the merits. *See Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984).

## CONCLUSION

Default judgment is **GRANTED** against Newsome to the extent outlined above. Plaintiffs' Motion for Judgment on the Pleadings and Default Judgment (Doc. 23) is **GRANTED IN PART** and **DENIED IN PART**. The Court **DECLARES** that (1) Ohio Security has no duty to defend Dirtworkz or Newsome in the Underlying Suit under the Auto Policy or the CGL Policy; and (2) Ohio Casualty has no duty to defend Dirtworkz or Newsome in the Underlying Suit under the Umbrella Policy.

Plaintiffs' claims concerning the duty to indemnify are **DISMISSED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to close this case.

**DONE** and **ORDERED** this 30th day of October, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE